UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x  Docket No.: 21-1137
MURPHY MEDICAL ASSOCIATES, LLC;  :
DIAGNOSTIC AND MEDICAL SPECIALISTS  :  **COMPLAINT**
OF GREENWICH, LLC; and STEVEN A.R.  :
MURPHY, M.D.,  :  **JURY TRIAL DEMANDED**
                          :
                  Plaintiffs,  :
     vs.  :
                          :
MOLINA HEALTHCARE OF NEW YORK, INC., :
MOLINA HEALTHCARE, INC.,  :
                          :
                  Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

       Plaintiffs Murphy Medical Associates LLC, Diagnostic and Medical Specialists of Greenwich, LLC (collectively, "Murphy Practice") and Steven A.R. Murphy, M.D. ("Dr. Murphy"), by their attorneys, Harris Beach, PLLC, for their Complaint against the Defendants, Molina Healthcare of New York, Inc. and Molina Healthcare, Inc. (collectively, "Molina"), allege as follows.

## **INTRODUCTION**

       1.     Plaintiffs bring this case because Molina, a managed care health insurance company, is blatantly defying federal and state law, as well as principles of equity, by refusing to reimburse Plaintiffs for COVID-19 testing that Plaintiffs provided to Molina's members and/or beneficiaries.

       2.     In 2020, and in response to the COVID-19 pandemic and public health emergency, Congress twice passed statutes – the Families First Coronavirus Response Act (FFCRA) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) – requiring all insurers, including Molina, to cover such COVID-19 tests and related services, regardless of whether they

are provided by in-network or out-of-network providers. Such coverage must be complete: copayments, deductibles, coinsurance and limits on coverage are not permitted.

3.      Molina, however, has refused to honor federal law and, instead, has either issued outright denials of claims submitted by the Murphy Practice or attempted to infinitesimally "reimburse" the Murphy Practice through checks in the amount of $0.01 or $0.02 each. The Murphy Practice has appealed every claim submitted to Molina, which were summarily denied and later advised to the Murphy Practice that it has exhausted all appeal rights.

4.      Plaintiffs, therefore, are left with no recourse against Molina other than through the Court and litigation to hold Molina accountable for its wrongful conduct.

## PARTIES

5.      At all times relevant to this matter, Plaintiff Murphy Medical Associates LLC is a limited liability company organized under Connecticut law. Its principal place of business is located at 30 Buxton Farms Road, Stamford, Connecticut 06905.

6.      At all times relevant to this matter, Plaintiff Diagnostic and Medical Specialists of Greenwich, LLC is a limited liability company organized under Connecticut law. Its principal place of business is located at 30 Buxton Farms Road, Stamford, Connecticut 06905.

7.      At all times relevant to this matter, Plaintiff Steven A.R. Murphy, M.D. is a physician licensed to practice medicine in Connecticut and New York. His principal place of practice is located at 30 Buxton Farms Road, Stamford, Connecticut 06905.

8.      Upon information and belief, Defendant Molina Healthcare, Inc. is a corporation organized under California law with its principal place of business located at 200 Oceangate STE 100, Long Beach, CA 90802.

9.      Upon information and belief, Defendant Molina Healthcare of New York, Inc. is a corporation organized under New York law with its principal place of business located at 5232

Witz Drive, North Syracuse, New York 13212 and is a wholly owned subsidiary of Molina Healthcare Inc.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this dispute under 28 U.S.C. § 1331 because the Murphy Practice asserts federal claims against Molina under the Families First Coronavirus Relief Act, the CARES Act, the Affordable Care Act, and ERISA.

11.    This Court also has supplemental jurisdiction over the Murphy Practice state law claims against Molina because these claims are so related to the Murphy Practice's federal claims that the state law claims form a part of the same case or controversy. This Court accordingly has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

12.    This Court also has personal jurisdiction over Molina because Molina carries on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the businesses and this action; and Molina engages in substantial, and not isolated, activity within this judicial district.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this District.

## FEDERAL LAW REQUIRES MOLINA TO REIMBURSE PLAINTIFFS

14.    In March 2020, Congress, in recognition of the COVID-19 public health emergency and the desperate need to address it by making COVID-19 testing readily available to anyone who needed or wanted it, enacted two statutes that addressed the issue of payment for testing: the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

15.    Specifically, through the FFCRA, Congress mandated that health plans and managed care companies, such as Molina, must cover and reimburse providers for conducting COVID-19 testing, COVID antibody testing, and related testing and services.

16.    In recognition of the public health crisis, Congress went much further than merely requiring insurers to cover testing.  To ensure that no patient would be deterred from getting a COVID-19 test due to a concern for the cost, Congress required coverage for COVID-19 testing and related services to be provided without cost sharing, deductibles, copayments or coinsurance, or other medical management requirements, regardless of whether the COVID-19 testing and related services were provided by "in-network" or "out of network" providers.

17.    Indeed, guidance from the Departments of Labor, Health and Human Services and the Treasury has clarified that the FFCRA and the CARES Act apply to COVID-19 testing, antibody testing, and related services rendered by both "in-network" and "out-of-network" providers." [1]

18.    In essence, Congress sought to ensure that any patient with health insurance could get a COVID-19 test without any out-of-pocket costs, and without having to get permission from their insurer.

**PLAINTIFFS' RESPONSE TO THE COVID-19 CRISIS**

19.    Dr. Murphy completed his internship in medical genetics and pediatrics at Mount Sinai Hospital in New York. He subsequently served as the chief resident in internal medicine at Greenwich Hospital-Yale New Haven Health in Greenwich, Connecticut. Prior to entering private

---

[1] FAQs dated April 11, 2020, at Q.7 and Q.4, available at https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf

practice, Dr. Murphy also served as a clinical fellow in medical genetics at Yale Medical School in New Haven, Connecticut.

20.     As a physician, Dr. Murphy specializes in general medical care, personalized medicine and genetics, weight loss medicine, adolescent care, and hereditary cancers. In addition, Dr. Murphy is an FAA Senior Aviation Medical Examiner, a United States Civil Surgeon, and an obesity medicine specialist.

21.     Dr. Murphy serves as an assistant professor of medicine, cell biology, and anatomy at New York Medical College in Valhalla, New York.

22.     Among its other services, the Murphy Practice operates a state-licensed physician office laboratory located at 30 Buxton Farms Road in Stamford, Connecticut. Dr. Murphy is the certified laboratory director for this laboratory under the federal Clinical Laboratory Improvement Amendments ("CLIA") and Connecticut law.

23.     On or about March 9, 2020 and in response to the COVID-19 pandemic, the Murphy Practice, an internal medicine practice with offices throughout Connecticut, transformed its traditional medical practice to set up COVID-19 testing sites throughout Connecticut and New York.

24.     These sites were designed to provide efficient drive and/or walk-through COVID-19 testing to patients with symptoms or suspected exposure to the novel coronavirus.

25.     Ultimately, the Murphy Practice operated drive and/or walk-through COVID-19 testing sites in, among other places, Greenwich, Stamford, New Canaan, Darien, Fairfield, Bridgeport, New Haven, West Haven, Stratford, and Ridgefield, Connecticut, and Bedford, Brooklyn, and Pound Ridge, New York.

26.     Since March 9, 2020, the Murphy Practice has provided COVID-19 testing and/or related services to over 35,000 patients and engaged in over 85,000 unique encounters with those patients.

27.     Generally, the Murphy Practice has utilized nasopharyngeal swabs to collect patient samples to test for SARS-CoV-2.

28.     The Murphy Practice operates a fully licensed physician office laboratory located at 30 Buxton Farms Road in Stamford, Connecticut.  Through this laboratory, the Murphy Practice has been able to process internally many of the patient samples that the Murphy Practice collects.

29.      Each swab taken by the Murphy Practice was either sent to the Murphy Practice's lab or to a third-party laboratory for processing.

30.     Beginning in or about June 1, 2020, and for the vast majority of swabs that the Murphy Practice processed internally in its laboratory, the Murphy Practice utilized the BioFire 2.1 Respiratory Panel, a respiratory panel that tests for 22 respiratory pathogens, including SARS-CoV-2.[2]

31.     The Murphy Practice's use of its BioFire machines at its internal laboratory allowed the Murphy Practice, generally, to analyze the samples being tested and produce results at a much faster rate than other commercial third party labs.

32.     Beginning in or about May 2020, the Murphy Practice began providing COVID-19 testing to Molina beneficiaries.

---

[2]  On March 17, 2021, the BioFire 2.1 became the ***first*** Covid-19 test to upgrade from an emergency use authorization to fully approved FDA status.  *See* https://www.biomerieux.com/en/biofirer-respiratory-21-rp21-panel-sars-cov-2-obtains-de-novo-fda-authorization;  https://www.news-medical.net/news/20210317/FDA-authorizes-marketing-of-first-SARS-CoV-2-diagnostic-test-using-De-Novo-premarket-review-pathway.aspx.  The myriad benefits of testing for other pathogens simultaneously with testing for SARS-CoV-2 are well stated in the literature and federal guidance.

33.     Upon information and believe, all swabs of Molina members and/or beneficiaries

were processed in the Murphy Practice's laboratory.

34.     The Murphy Practice provided COVID-19 testing to the following Molina members

and beneficiaries[3]:

i.      On or about June 22, 2020, July 7, 2020, July 21, 2020, August 31, 2020, September 9, 2020 and September 15, 2020, Molina Patient S.H. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient S.H. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient S.H.'s sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient S.H.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $9,000.00 for the aforementioned services and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient S.H.

ii.     On or about September 2, 2020, September 14, 2020, September 21, 2020, September 30, 2020 and October 5, 2020, Molina Patient M.M. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient M.M. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient M.M's sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient M.M.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $7,500.00 for the aforementioned services provided to Molina Patient M.M. and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient M.M.

iii.    On or about September 2, 2020, September 21, 2020 and September 22, 2020, Molina Patient L.M. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient L.M. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient L.M's sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient L.M.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $4,500.00 for the aforementioned services provided to Molina Patient L.M. and has yet to

---

[3] In order to protect the patients' identity, Plaintiffs' will only reference their identity by their initials throughout the Complaint.

be fully reimbursed for critical COVID-19 testing provided to Molina Patient L.M.

iv.    On or about May 20, 2020, June 1, 2020, June 4, 2020, June 8, 2020, June 15, 2020, June 29, 2020, July 6, 2020, August 11, 2020, September 2, 2020, September 14, 2020, September 21, 2020, October 2, 2020 and October 5, 2020, Molina Patient J.M. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient J.M. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient J.M's swab sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient J.M.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $21,000.00 for the aforementioned services provided to Molina Patient J.M. and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient J.M.

v.    On or about January 5, 2021, Molina Patient A.N. presented to the Murphy Practice in Greenwich, Connecticut for COVID-19 testing. On or about the above-referenced date, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient A.N.'s swab sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient A.N.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of $1,500.00 for the aforementioned services provided to Molina Patient A.N., for which the Murphy Practice has not received any reimbursement for critical COVID-19 testing provided to Molina Patient A.N.

vi.    On or about May 20, 2020, June 1, 2020, June 4, 2020, June 8, 2020, June 15, 2020, June 22, 2020, June 29, 2020, July 6, 2020, August 10, 2020, September 2, 2020, September 14, 2020, September 21, 2020, September 30, 2020 and October 5, 2020, Molina Patient L.O. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient L.O. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient L.O's swab sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient L.O.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $21,000.00 for the aforementioned services provided to Molina Patient L.O. and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient L.O.

vii.    On or about July 8, 2020, July 14, 2020, August 31, 2020, September 9, 2020, September 15, 2020, September 22, 2020 and October 4, 2020, Molina Patient

S.S. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient S.S. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient S.S's swab sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient S.S.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $10,500.00 for the aforementioned services provided to Molina Patient S.S. and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient S.S.

viii.    On or about May 20, 2020, May 26, 2020, May 29, 2020, June 1, 2020, June 4, 2020, June 15, 2020, June 22, 2020, June 29, 2020, July 6, 2020, September 2, 2020, September 14, 2020, September 21, 2020, September 22, 2020 and October 5, 2020, Molina Patient C.S. presented to the Murphy Practice for COVID-19 testing. Upon information and belief, Molina Patient C.S. was a New York State nursing home employee with required state testing obligations. On or about the above-referenced dates, the Murphy Practice utilized a nasopharyngeal swab to collect Molina Patient C.S's swab sample to test for SARS-CoV-2 using the BioFire 2.1 and sent Molina Patient C.S.'s swab to the Murphy Practice's laboratory for processing at 30 Buxton Farms Road in Stamford, Connecticut. The Murphy Practice billed Molina the sum of approximately $21,000.00 for the aforementioned services provided to Molina Patient C.S. and has yet to be fully reimbursed for critical COVID-19 testing provided to Molina Patient C.S.

35.    Based on the provisions of the Families First Coronavirus Response Act, the CARES Act, and the Affordable Care Act discussed above, the Murphy Practice had every expectation that Molina would honor its obligations and reimburse the practice for these COVID-19 testing provided to its members or beneficiaries. Indeed, other carriers similarly situated to Molina honored their obligations to the Murphy Practice.

36.    To date, the Murphy Practice has billed Molina approximately $96,000 for approximately 64 claims relating to COVID-19 testing provided to the aforementioned Molina members and/or beneficiaries, yet has only been reimbursed approximately $78.10 for these claims.

37.    In response to Molina's denials and infinitesimal "reimbursements," the Murphy Practice, on or about December 18, 2020 and through counsel, sent Molina a letter requesting an explanation for Molina's behavior.

38.    Molina ignored and failed to respond to the letter and, instead, continued sending $0.01 and $0.02 "reimbursement" checks to the Murphy Practice.

39.    The Murphy Practice has appealed every claim which Molina has either denied or "reimbursed" and, through that appeal process, sent Molina hundreds of pages of responsive medical and laboratory records.

40.    The Murphy Practice's efforts have largely fallen deaf ears.

41.    Molina, notwithstanding the aforementioned FFCRA, CARES Act and Affordable Care Act, has denied each appeal for various reasons, including stating that "claim denied correctly" or "past dispute timely filing."

42.    Each denial was made without sufficient investigation, lacked any reasonably arguable basis and was in violation of federal and state law.

43.    Molina has since advised the Murphy Practice that the Murphy Practice has exhausted its right of appeal on any of the denied or under-reimbursed claims.

44.    Despite not receiving any reimbursement from Molina the Murphy Practice has not and will not bill a Molina member or beneficiary (or any patient for that matter) for any of the testing services.

## FIRST CAUSE OF ACTION
### (FFCRA and CARES Act)

45.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth at length herein.

46.    Molina offers group health plans and is a health insurance issuer offering group or individual health insurance coverage, as those terms are defined under section 6001 of the Families First Coronavirus Response Act.

47.    The COVID-19 testing services that the Murphy Practice provided to Molina members and beneficiaries constitute in vitro diagnostic products for the detection of COVID-19 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized under Federal Food, Drug, and Cosmetic Act, and the administration of such in vitro diagnostic products pursuant to 21 C.F.R. § 809.3(a), as provided by section 6001 of the FFCRA.

48.    The Murphy Practice did not have a negotiated rate with Molina for the provision of these services.

49.    Under section 3202(a) of the CARES Act, if a health plan such as Molina's does not have a negotiated rate with a provider such as the Murphy Practice for providing COVID-19 testing, the health plan is obligated to pay the provider its cash price for providing those services.

50.    Molina, despite numerous and persistent demands and requests, has failed and refused to provide anything remotely close to the Murphy Practice's cash price for providing the COVID-19 testing related services.

51.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to a judgment against Molina in the amount of at least $96,000.00, plus interest, together with the costs and disbursements of this action, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### (ACA)

52.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth at length herein.

53.    The Patient Protection and Affordable Care Act added section 2719A to the Public

Health Services Act, 42 U.S.C. § 300gg-19a.

54.     Section 2719A requires any group health plan, or health insurer that provides or covers benefits with respect to services in an emergency department of a hospital, to cover any emergency services, including, emergency services outside of the emergency department, without the need for prior authorization, without regard to the provider's status as an out-of-network provider, and in a manner that ensures that the patient's cost-sharing requirement is the same requirement that would apply if such services were provided in-network. 42 U.S.C. § 300gg-19a. These requirements are expressly incorporated into group health plans covered by ERISA. 29 U.S.C. § 1185d(a).

55.     Molina's health plans at issue in this lawsuit are health plans that are subject to the provisions of 42 U.S.C. § 300gg-19a or 29 U.S.C. § 1185d(a).

56.     The COVID-19-related testing services provided by the Murphy Practice that are at issue in this lawsuit meet the definition of emergency services under 42 U.S.C. § 300gg-19a.

57.     Accordingly, Molina was obligated to cover these COVID-19-related testing services under 42 U.S.C. § 300gg-19a and 29 U.S.C. § 1185d(a).

58.     Regulations provided pursuant to these sections require that, to satisfy their coverage obligations for emergency services, health plans must reimburse out-of-network providers at the greater of (a) the amount negotiated with in-network providers for the emergency service, accounting for in-network co-payment and co-insurance obligations; (b) the amount for the emergency service calculated suing the same method the plan generally uses to determine payments for out-of-network services (such as usual, customary, or reasonable charges), but substituting in-network cost-sharing provisions for out-of-network cost-sharing provisions; or (c) the amount that would be paid under Medicare for the emergency service, accounting for in-network co-payment and co-insurance obligations. 29 C.F.R. § 590.715-719A(b)(3)(i)(A)-(C).

59.    Molina, despite numerous and persistent demands and requests, has failed and refused to provide to the Murphy Practice anything remotely close to the reimbursement required by 29 C.F.R. § 590.715-719A(b)(3)(i)(A)-(C).

60.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to a judgment against Molina in the amount of at least $96,000.00, plus interest, together with the costs and disbursements of this action, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### (ERISA)

61.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth at length herein.

62.    Even if the FFCRA and CARES Act did not, on their own, obligate Molina to reimburse the Murphy Practice for the medically necessary COVID-19-related testing that it performed – which they most certainly do – Molina would still be obligated to reimburse the Murphy Practice for the COVID-19-related testing. This is because the FFCRA and CARES Acts are to be treated, for enforcement purposes, as if they were included in ERISA.

63.    Even were this not the case, the FFCRA and the CARES Act broadly apply to all health care plans, including ERISA plans, meaning that ERISA plans are required to cover COVID-19 testing and related services as provided in the FFCRA and the CARES Act.

64.    On information and belief, a significant number of claims the Murphy Practice has submitted to Molina relate to patients enrolled in ERISA plans. ERISA, the FFCRA, the CARES Act and Affordable Care Act require all Molina ERISA plans to cover COVID 19 testing regardless of the terms of their plan.

65.    Upon information and belief, the Molina ERISA health plans do not prohibit patients from assigning their rights to benefits under the plans to the Murphy Practice, including direct

payment of benefits under the plans to the Murphy Practice.

66.    As such, the Murphy Practice has standing to pursue claims under ERISA as the assignee and authorized representative of its patients who are members or beneficiaries of Molina's ERISA health plans.

67.    As the assignee of its patients, the Murphy Practice is entitled to payment under Molina's ERISA health plans for the medical services provided to Molina's patients by the Murphy Practice.

68.    Moreover, even if some of the Molina ERISA health plans prohibited the assignment of benefits to the Murphy Practice, Molina waived any purported anti-assignment provisions, ratified the assignment of benefits to the Murphy Practice, and waived or is estopped from using any purported anti-assignment provisions against the Murphy Practice due to Molina's course of dealing with and statements to the Murphy Practice as an out-of-network provider.

69.    Upon information and belief, Molina's ERISA health plans require payments of emergent and elective medical expenses incurred by its members and beneficiaries up to the rate of the Murphy Practice's full incurred charges (less in-network patient responsibility amounts) for emergency/urgent care and (less out-of-network patient responsibility amounts) for elective care.

70.    The Murphy Practice's incurred charges represent its usual and customary rates for the treatment provided to Molina's members or beneficiaries.

71.    Molina breached the terms of its ERISA health plans by refusing to make out-of-network payments for charges covered by the plans, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

72.    These breaches include, among other things, (a) refusing to reimburse the Murphy Practice for the medically necessary testing it provided to Molina's members or beneficiaries, as

required by the FFCRA, the CARES Act, or the Affordable Care Act; (b) refusing to reimburse the Murphy Practice for the medically necessary services that it provided to Molina's members or beneficiaries, as required by 29 C.F.R. § 590.715-719A(b)(3)(i)(A)-(C); or (c) otherwise refusing to reimburse Murphy Practice the legally required amounts due under the plans for the medically necessary services provided by the Murphy Practice to Molina's members or beneficiaries.

73.    On information and belief, Molina's blanket denials or infinitesimal reimbursement of the Murphy Practice's claims for COVID-19 testing, and unjustifiable records requests, violate the provisions of these ERISA plans and wrongfully deny benefits due under ERISA.

74.    As a result of, among other acts, Molina's numerous procedural and substantive violations of ERISA and other federal statutes, any appeals are deemed exhausted or excused, and the Murphy Practice is entitled to have this Court undertake a *de novo* review of the issues raised in this Complaint.

75.    To the extent that any of Molina's ERISA plans have not followed the requirements of the FFCRA and CARES Act, and do not provide full coverage of COVID-19 testing services, they are in violation of the FFCRA, the CARES Act, the Affordable Care Act and ERISA.

76.    To the extent that any of Molina's ERISA plans do provide COVID-19 testing benefits as required by the FFCRA and the CARES Act, Molina has wrongfully failed to pay the Murphy Practice as required by the plans, in violation of ERISA.

77.    Based on the provisions of the FFCRA, the CARES Act and Affordable Care Act, discussed above, the Murphy Practice had every expectation that Molina would honor its obligations and reimburse the practice for these COVID-19-related testing services provided to its members or beneficiaries. Indeed, other carriers similarly situated to Molina honored their obligations to the Murphy Practice.

78.    It is hard to imagine a clearer violation of the FFCRA and the CARES Act, than an insurer who has been provided with proof that one of their beneficiaries was determined by a physician to be in medical need of a COVID-19 test, and provided with proof that the test was performed, yet refuses to pay anything.

79.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to a judgment against Molina in the amount of at least $96,000.00, plus interest and attorneys' fees. The Murphy Practice is also entitled to declaratory relief to enforce the terms of Molina's ERISA health plans and to clarify its right to future benefits under such plans.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

80.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth herein.

81.    Plaintiffs have submitted numerous claims to Molina for COVID-19-related testing provided to Molina's members and beneficiaries.

82.    As discussed above, Molina is obligated to reimburse Plaintiffs for the COVID-19 testing Plaintiffs provided to Molina's members and beneficiaries.

83.    Molina has failed to reimburse Plaintiffs for the COVID-19 testing Plaintiffs provided to Molina's members and beneficiaries.

84.    By providing medically necessary COVID-19 testing services to Molina members and beneficiaries, Plaintiffs conferred a benefit upon Molina because Plaintiffs' provision of healthcare services facilitated Molina's obligations to arrange and pay for COVID-19 testing services for its members.

85.    In addition, Molina benefited from the insurance premiums it received from members and beneficiaries in exchange for out-of-network healthcare coverage.

86.     To satisfy its legal obligations, Molina required the services of Plaintiffs to render testing services to Molina members and beneficiaries.

87.     By virtue of the foregoing, Molina has received a benefit, in that Plaintiffs have provided COVID-19 testing to Molina's members and beneficiaries for which Molina has not paid for.

88.     Moreover, Plaintiffs' COVID-19 testing it provided to Molina members and beneficiaries conferred an additional benefit to Molina by decreasing the cost of long-term care as a result of early detection through COVID-19 testing.

89.     Molina knew that Plaintiffs provided the medically necessary testing services in satisfaction of Molina's obligations to its members.

90.     Molina has unjustly failed to reimburse Plaintiffs for the benefit.

91.     Molina's failure to reimburse Plaintiffs was and is to Plaintiffs' detriment.

92.     As a result, Plaintiffs are entitled to a judgment against Molina in the amount of at least $96,000.00, plus interest.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

93.     Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth herein.

94.     Upon information and belief, at all relevant time periods herein, Molina operated a managed care health insurance company and issued policies to Molina beneficiaries pertaining to healthcare services.

95.     Upon information and belief, these policies provided for the reimbursement of medical care services rendered by providers, such as the Murphy Practice, who are commonly

referred to as non-participating providers, who do not have agreements with Molina.

96.    Based on the provisions of the FFCRA and the CARES Act, Molina was required to reimburse Plaintiffs as a non-participating provider for COVID-19 testing and related services to Molina's members and beneficiaries.

97.    As a result, an implied contract was created between Plaintiffs and Molina.

98.    At all times relevant herein, Plaintiffs were the intended beneficiaries of the policies, which were issued by Molina.

99.    At all times relevant herein, Molina had knowledge that Plaintiffs treated its insured and accepted the benefits conferred by Plaintiffs.

100.    The reasonable and customary charges for the services that were rendered to Molina members and beneficiaries is in an amount no less than $96,000.00, of which approximately $77.86 has been paid by Molina.

101.    As a result, Molina owes Plaintiff an amount no less than $96,000.00.

102.    Plaintiffs and Molina's members and beneficiaries have fully performed their obligations and conditions precedent under the policies.

103.    Plaintiffs have made a demand upon Molina for payment of at least $96,000.00.

104.    Molina's refusal to make payment on the balance is in contravention and in breach of its agreement with the Plaintiffs.

105.    As a result of the aforesaid breach, Plaintiffs have been damaged in an amount no less than $96,000.00.

## SIXTH CAUSE OF ACTION
### (Violations of CUIPA)

106.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth herein.

107.    Molina's actions constitute unfair claims settlement practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816.

108.    Molina's acts and omissions offend public policy as established by the Connecticut Unfair Insurance Practices Act.

109.    Molina's acts are immoral, unethical, oppressive, and unscrupulous, with respect to their affects upon patients and providers, including Plaintiffs.

110.    Molina's acts are causing substantial injury to patients and providers, including Plaintiffs who continue to provide critical COVID-19 testing.

111.    Molina's acts are causing substantial injury to Plaintiffs.

112.    Molina's acts have caused Plaintiffs to suffer an ascertainable loss of money and/or property.

113.    Plaintiffs are entitled to compensation for the ascertainable loss they suffered as a result of Molina's acts.

## SEVENTH CAUSE OF ACTION
### (Violations of CUTPA)

114.    Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth herein.

115.    Molina's acts represent a uniform practice of Molina.

116.    Molina's acts constitute an unfair trade practice.

117.    Molina has engaged in the aforementioned unfair trade practices with such frequency as to indicate a general business practice.

118.    Despite Plaintiffs repeated efforts to obtain proper payment on the claims, Molina has refused to enter into a meaningful dialogue with Plaintiffs regarding the services rendered to Molina's members and beneficiaries.

119.    Instead, Molina has either issued fractional amounts of payment or flatly denied the claims itself, without sufficient investigation and/or lacking in any reasonably arguable basis.

120.    Plaintiffs have exhausted all of its administrative causing this litigation to ensue.

121.    Molina's acts are a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b.

122.    Molina's acts are wanton and reckless given the harm they have caused and will continue to cause Plaintiffs, and Molina knew or should have known of the wrongfulness of its acts and that such severe harm would have resulted from such acts.

123.    Molina acted with reckless indifference to the rights of others, including Plaintiffs.

124.    By reason of the foregoing, Plaintiffs are entitled to compensatory damages, punitive damages, and attorney's fees against Molina pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g.

**WHEREFORE**, Plaintiffs demand judgment as follows:

a)    On the First Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

b)    On the Second Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

c)    On the Third Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be

determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

d)    On the Fourth Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

e)    On the Fifth Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

f)    On the Sixth Count, a judgment against Molina, awarding the Murphy Practice compensatory damages in an amount to be determined at trial, such amount being no less than $96,000.00, plus pre-judgment and post-judgment interest;

g)    On the Seventh Cause of Action, awarding the Murphy Practice and Dr. Murphy compensatory damages, punitive damages, and attorney's fees against Cigna pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g

h)    On all Counts, punitive damages, in an amount to be determined at trial, pursuant to C.G.S. § 42-110g(a);

i)    On all Counts, Plaintiffs'' costs and reasonable attorney's fees in bringing this action, pursuant to C.G.S. § 42-110g(d); and

j)    Such other and further relief as the Court may deem equitable, just and proper.

Dated: New Haven, Connecticut
        August 24, 2021

HARRIS BEACH PLLC
*Attorneys for Plaintiffs*

By: /s/ Roy W. Breitenbach
    Roy W. Breitenbach
    Daniel S. Hallak
The Omni
333 Earle Ovington Boulevard, Suite 901
Uniondale, New York 11553
(516) 880-8484

195 Church Street, #18
New Haven, Connecticut 06510
(203) 784-3159

TO:

Molina Healthcare Inc.
200 Oceangate STE 100
Long Beach, CA 90802.


Molina Healthcare of New York, Inc.
5232 Witz Drive
North Syracuse, New York 13212